IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**ANTHONY LAMAR**                                                                **PLAINTIFF**
**ADC #120479**

V.                          NO. 5:18-cv-00292-BSM-ERE

**WENDY KELLEY,** *et al.*                                                       **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections

This Recommendation for dismissal has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### II.  Background

On November 14, 2018, Arkansas Division of Correction ("ADC") inmates Anthony Lamar, Edgar Guinther, Michael Snyder, Paul Latham, and Nickarlos A. Banks filed a joint complaint, challenging prison policies that limit inmates' incoming correspondence to three pages and permit them to retain only five

photographs at a time. *Docs. 2,5*. Pursuant to Court policy, a separate case was opened for each Plaintiff.

Mr. Lamar's complaint included the separate allegation that ADC officers Randy Straughn, James Gibson, Yolanda Linsey, James Shipman, and Flora Washington retaliated against him by transferring him to the Varner Supermax and writing false disciplinaries against him.[1] *Doc. 2 at 7-8, Doc. 11-20; Doc. 5*.

Defendants seek summary judgment, contending that: (1) the challenged policies are constitutional; (2) Mr. Lamar cannot show that "but for" the protected activity his housing assignment would be different; (3) some evidence supports Mr. Lamar's disciplinary convictions; and (4) Defendants are entitled to both qualified and sovereign immunity. *Doc. 100*.

In his response (*Docs. 111, 112*), Mr. Lamar continues to pursue retaliation claims against Defendants Gibson, Linsey, Shipman, and Washington, but he voluntarily dismisses his challenge to prison policy and his retaliation claim against Defendant Straughn, conceding his "loss" on those claims. *Doc. 111 at 2*.

For the reasons explained below, the Court recommends that judgment be entered in Defendants' favor and that all of Mr. Lamar's remaining claims be dismissed, with prejudice.

---

[1] The Court previously dismissed all other claims and Defendants. *Docs. 7, 24, 43, 57*.

### III. Discussion

#### A. Summary Judgment Standard

A moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

#### B. ADC Inmate Correspondence and Photograph Retention Policy

Although Mr. Lamar asks to dismiss his claims challenging prison policy, the Court recommends these claims be dismissed, with prejudice, consistent with the rulings in two of the companion cases that the challenged policies are constitutional and do *not* violate inmates' First or Fourteenth Amendment rights. See *Banks v. Kelley, et al.*, No. 5:18-cv-00293 (*Docs. 77, 78*), 2021 WL 1939671 (E.D. Ark. April 22, 2021) (providing a detailed analysis of why the policies are constitutional), 2021 WL 1929819 (E.D. Ark. May 13, 2021); and *Guinther v. Kelley, et al*. No. 5:18-cv-00296 (*Docs. 98, 102*), 2021 WL 2451149 (E.D. Ark. May 12, 2021), 2021 WL 2446184 (E.D. Ark. June 15, 2021).

### C. Retaliation Claims

#### 1. Material, Undisputed Facts

On August 8, 2017, Mr. Lamar wrote a grievance complaining that Defendant Linsey refused to sign a grievance he had written against another ADC officer. *Doc. 2 at ¶¶ 13, 22; Doc. 100-12 at 15, 24; Doc. 112 at 106.* In his deposition, Mr. Lamar recalled that when he presented the grievance to Defendant Linsey, she refused to sign it and did not advise him to obtain a signature from another sergeant. *Doc. 100-12 at 15.* Contrary to this testimony, in his written grievance, Mr. Lamar specifically stated that Defendant Linsey told him to find another sergeant to sign the grievance. *Doc. 112 at 106.* Ultimately, the ADC Director found the grievance had no merit, concurring with the Warden who found:

> Lt. Linsy [sic] advised she was running the chow hall on this day and could not sign your grievance. You were instructed to be patient or wait to ask a zone Sergent [sic]. According to the records the date (8/8/17) you initiated this grievance it was also signed by staff. Therefore, I find this issue without merit.

*Id.*

About twenty days later, between August 28 and August 30, 2017, Mr. Lamar circulated a memo entitled, "Arkansas Division of Correction Inter—Prison Communication." *Doc. 100-12 at 17, 24-25; Doc. 111 at 21-22.* The memo began:

> I need your help in getting this new Mail Policy, AD 17-23, done away with. I need for <u>EVERYONE</u> to file a grievance, saying AD 17-23 is unconstitutional violation of your First Amendment Rights. . . .

4

*Doc. 100-16*.

Before he distributed the memo, Mr. Lamar penned it in longhand and sent it to his cousin, with instructions to type it on ADC letterhead. *Doc. 100-12 at 17*. After Mr. Lamar received the forged memo from his cousin, he obtained additional copies by using the ADC's "legal mail" process, which is designed to provide inmates copies of legal materials. *Doc. 100-12 at 17; Doc. 102 at 24; Doc. 111 at 21-22*. Defendant Gibson ordered an investigation (*Doc. 112 at 42-43*), and on August 30, 2017, Defendant Linsey charged Mr. Lamar with disciplinary violations, stating:

> On August 30, 2017 at approximately 9:15A.M. I, LT. Yolanda Linsy, had been assigned the task to investigate an incident concerning Anthony Lamar ADC #120479 for using state property to manufacture a direct involvement in writing, circulating, or signing a petition, letter, or similar declaration that poses a threat to the security of the facility. At that time evidence was provided that showed Arkansas Department of Correction Inter Office Communication letter head that was altered to read Arkansas Department of Correction Inter Prison Communication address as the following: To whom it may concern, personal mail, photo victims. From inmate Anthony Lamar ADC 120479 dated August 25, 2017. Inmate Lamar, A. 120479 stated "I need your help in getting his new mail policy, AD 17-23, done way with I need everyone help to file a grievance saying AD 17-23 is unconstitutional."
>  . . .
> The letter, which Inmate Lamar, A. 120479 was discovered to have generated using a computer in the Library, encouraged the Inmate population to band together in order to disrupt unit operation by filing grievances against the mail policy AD 17-23. Therefore I Lt. Linsy charging inmate Anthony Lamar ADC# 11220479 with the rule violation 01-6, 12-3, 07-1 and 15-2.

*Doc. 100-13*.

Defendant Linsey's disciplinary charged Mr. Lamar with violating the following prison rules: (1) "[d]irect involvement in writing, circulating or signing a

5

petition, letter, or similar declaration that poses a threat to the security of the facility;" (2) "[f]ailure to obey verbal and/or written order of staff;" (3) "[u]nauthorized use of state property/supplies;" and (4) "[a]sking, coercing or offering inducement to anyone to violate Department policy or procedure, inmate rules and regulation, center/unit operating procedures." *Id*.; see also *Doc. 100-10 at 4-6, 8* (the ADC inmate disciplinary manual).

The same day that Defendant Linsey issued the disciplinary, Mr. Lamar attended a previously scheduled classification hearing where received a promotion to Class III status. *Doc. 100-12 at 17-18*. After the hearing concluded, Defendant Straughn handcuffed him and escorted him to isolation. *Id*. Mr. Lamar was in isolation for two or three days before he was transferred to administrative segregation at the Varner Supermax Unit. *Doc. 2 at ¶ 23; Doc. 100-12 at 18*.

On September 6, 2017, Mr. Lamar attended a classification hearing where committee members, noting the pending disciplinary charges, voted to keep him in restrictive housing. *Doc. 111 at 24, ¶ 116*.

On September 8, 2017, Defendant Straughn reviewed Mr. Lamar's disciplinary charges and referred them to a hearing officer. *Doc. 100-13*. On September 11, 2017, the charges were dismissed on procedural grounds because the charging document did not contain a start and stop date for the investigation. *Doc. 100-12 at 18; Doc. 102 at ¶ 118; Doc. 111 at 25, ¶ 118*.

On September 14, 2017, Defendants Gibson, Shipman, and Washington held a classification review hearing. *Doc. 2 at ¶¶ 16, 28-37; Doc. 100-12 at 19-20; Doc. 111 at 25, ¶ 121.* Mr. Lamar threatened to sue Defendants if they did not release him because he believed they were retaliating against him for fighting for his rights and the rights of others. *Doc. 111 at 26, ¶ 123.* According to Mr. Lamar, Defendant Gibson responded that he was free to file his own lawsuit, but he should not involve other inmates. *Doc. 111 at 27, ¶ 125.* Mr. Lamar admits that "an exchange" between the participants ended the hearing. *Doc. 100-12 at 20.* After the hearing, Defendants Gibson, Shipman, and Washington unanimously voted to keep Mr. Lamar in restrictive housing. *Doc. 111 at 27, ¶ 127.*

On September 20, 2017, Mr. Lamar was released from administrative segregation because that unit needed more space for other inmates. *Doc. 2 at ¶¶ 28-37; Doc. 100-12 at 19-20.*

Mr. Lamar contends that the disciplinary written by Defendant Linsey, the transfer to isolation, the transfer to administrative segregation, and his placement in administrative segregation until September 20, 2017 were unconstitutional retaliatory acts. *Docs. 2; 111.*

## 2. Analysis

To succeed on his First Amendment retaliation claim, Mr. Lamar must prove "(1) he engaged in a protected activity, (2) [Defendants] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (quoting *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013)).

Mr. Lamar must prove that retaliation was an "actual motivating factor for the adverse action." *Griggs v. Norris*, 297 Fed. Appx. 553, 555 (8th Cir. 2008). In addition, allegations of retaliation must be more than speculative and conclusory. *Atkinson v. Bohn*, 9 F.3d 1127, 1129 (8th Cir. 1996).

### a. August 30, 2017 Disciplinary

Mr. Lamar asserts that Defendant Linsey retaliated against him when she charged him with a disciplinary on August 30, 2017 because: (1) he issued a grievance against her on August 8, 2017; and (2) he encouraged other inmates to file grievances complaining about prison policy. *Doc. 2 at ¶¶ 13, 22; Doc. 100-12 at 24.*

It is well settled that prison officials cannot "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). However, prisoners do *not* have a constitutional right to encourage other inmates to

file grievances. *Rouse v. Benson*, 193 F.3d 936, 941 (8th Cir. 1999) (officials can transfer inmate for convincing other inmates to file grievances regarding their ability to practice their Native American religion); *Nickens v. White*, 622 F.2d 967 (8th Cir. 1980) (prison officials justified in prohibiting the circulation of a petition, despite the First Amendment, based on reasonable security concerns).

Although encouraging fellow inmates to file grievances is not a constitutionally protected activity, prisoners *do* have a constitutional right to file grievances. See *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (explaining that the filing of grievances is part of a prisoner's First Amendment right to access the courts); *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995). Therefore, the Court must determine if the evidence will permit a reasonable jury to find that Defendant Linsey charged Mr. Lamar with this disciplinary at least in part because he wrote a grievance against her.

Importantly, a disciplinary is not retaliatory if issued for violation of a prison rule. *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006). Thus, Defendant Linsey can successfully defend the retaliation claim by showing "some evidence" that Mr. Lamar committed a rule violation. *Santiago*, 707 F.3d at 993; *Hartsfield*, 511 F.3d at 829 (citing *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993)).

The "some evidence" standard is met by Mr. Lamar's own admission that he wrote and circulated a memo throughout the Varner Unit encouraging inmates to file grievances. See *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (inmates own admission met the "some evidence" standard); *Doc. 111 at 8-9, 21*. It is irrelevant that the disciplinary was ultimately dismissed on procedural grounds. Furthermore, Mr. Lamar admits he used state property to make copies, and he cannot credibly argue that he was authorized to make copies of a prohibited petition.

Defendant Linsey wrote multiple charges from the single incident of circulating a petition. The record is silent on why she charged Mr. Lamar with failing to obey an order of staff or asking/offering inducement. Even assuming that Defendant Linsey overcharged Mr. Lamar, his retaliation claim fails because the charges included admitted rule violations. See *Orebaugh*, 910 F.2d at 528 (holding that "no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform"). Accordingly, Mr. Lamar's retaliatory disciplinary claims against Defendant Linsey fails.

### b. Transfer to Isolation and Administrative Segregation

Mr. Lamar argues that Defendants retaliated against him by subjecting him to various forms of restrictive housing. First, he claims that Defendants Gibson, Linsey, Shipman, and Washington detained him in isolation and administrative segregation because he distributed memos encouraging inmates to file grievances. *Doc. 2 at* ¶¶

10

*16, 17, 28-37; Doc. 100-12 at 18-20; Doc. 111 at 13-15*. This claim fails because, as explained above, Mr. Lamar's memo campaign was not protected activity.

Second, Mr. Lamar claims that Defendant Gibson subjected him to restrictive housing in 2017 in retaliation for a grievance he filed in 2010. *Doc. 2 at ¶ 22; Doc. 100-12 at 21*. The nearly seven-year gap between Mr. Lamar's protected activity and the alleged adverse action negates a reasonable inference of retaliation. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Kipp v. Mo. Highway and Transp. Comm'n.*, 280 F.3d 892, 897 (8th Cir. 2002)) ("The lack of a temporal connection between the protected activity and the alleged retaliation dispels an inference of causal connection."). Furthermore, Mr. Lamar received a disciplinary charge for admitted rule violations, and Defendant Gibson had a valid, non-retaliatory reason for placing Mr. Lamar in isolation and administrative segregation.

Third, Mr. Lamar claims that Defendants Shipman and Washington retaliated against him by voting with Defendant Gibson to keep him in restrictive housing after the disciplinary was dismissed. According to Mr. Lamar, Defendants Shipman and Washington voted with Mr. Gibson because he threatened to sue them. *Doc. 100-12 at 21*. Even though Mr. Lamar's disciplinary charge was dismissed, it is undisputed that he was guilty of violating prison rules as charged. Accordingly, Defendants Gibson, Shipman, and Washington acted well within reason to hold him in administrative segregation even after the disciplinary charges were dropped.

Mr. Lamar's retaliation claims against Defendants Gibson, Shipman, and Washington are supported only by speculation and conjecture, rather than facts that would permit a finder of fact to conclude that Mr. Lamer was the victim of unconstitutional retaliation. See *Atkinson v. Bohn*, 9 F.3d 1127, 1129 (8th Cir. 1996) (any allegations of retaliation must be more than speculative and conclusory). Accordingly, his retaliation claims should be dismissed.

## IV.   Conclusion

IT IS THEREFRE RECOMMENDED THAT:

1. Defendants Wendy Kelley, Randy Straughn, James Gibson, Yolanda Linsey, James Shipman, and Flora Washington's motion for summary judgment *(Doc. 100)* be GRANTED.

2. Plaintiff Anthony Lamar's claims against Defendants Kelley, Straughn, Gibson, Linsey, and Washington are DISMISSED, WITH PREJUDICE, and Mr. Lamar's claims against Defendant Shipman are DISMISSED, WITHOUT PREJUDICE.

3. The Clerk is directed to send Mr. Lamar a copy of the Recommendation for dismissal filed in *Banks v. Kelley*, No. 5:18-cv-00293 (*Doc. 77*), 2021 WL 1939671 (E.D. Ark. April 22, 2021), along with a copy of this Recommendation.

IT IS SO ORDERED this 2nd day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE